GEORGINA R. HINOJOSA                            CIVIL ACTION

v.                                              NO. 17-9861

JERRY LARPENTER, SHERRIFF                       SECTION "F"
OF TERREBONNE PARISH, ET AL.

ORDER AND REASONS

Before the Court is Terrebonne Parish Consolidated Government, Richard Neal, and Kelly Gaudet's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] For the following reasons, the motion is GRANTED in part (as to the federal claims against Terrebonne Parish Consolidated Government and Neal and Gaudet in their official capacity) and DENIED in part (as to the federal claims against Neal and Gaudet in their individual capacity and all state law claims).

**Background**

After sustaining an injury at Terrebone Parish Criminal Justice Complex, Jesus Hinojosa waited for four days before receiving medical treatment. Once he was evaluated, he was transported to Leonard J. Chabert Medical Center, admitted to their internal medicine unit, and shortly thereafter transferred to the

---

[1] Jerry Larpenter did not join this motion to dismiss. Instead, he submitted an answer to the complaint on October 24, 2017.

1

intensive care unit. After twenty days, he died in the ICU of hypoxia.[2] This Section 1983 suit followed.

Jesus Hinojosa was a Texas resident, but had temporarily relocated to Denham Springs, Louisiana in the fall of 2016. He was hired by Adrian Robles to repair houses damaged by the devastating flooding in August 2016. Robles asked Jesus, along with Jesus's nephew Jose Hinojosa, to join him on a trip.[3] During that trip, Robles, Jesus, and Jose, and two others, were arrested on November 29, 2016 after law enforcement found large quantities of cocaine in Robles' truck.[4] Jesus maintained that he had no knowledge of the drug presence, and was not aware that the trip involved drug trafficking.

Jesus was housed at the Terrebonne Parish Criminal Justice Complex, which is managed by the Terrebonne Parish Sherriff's Office. The jail and medical staff was aware that Jesus required treatment, proper diet, and medications to treat his serious medical conditions; he had undergone two open heart surgeries within the previous two years. Jesus's wife, Georgina Hinojosa,

---

[2] Hypoxia is a condition where the body or a region of the body is deprived of adequate oxygen supply.
[3] Because there are multiple Hinojosas involved in this suit, the Court will refer to Jesus Hinojosa by either Jesus or Mr. Hinojosa.
[4] Robles, Jesus, Jose, Franscisco Ruiz, and Jose Cervantes-Marron were subsequently indicted on federal charges for conspiring to distribute, and for possession with the intent to distribute, five kilograms of cocaine. The criminal matter, CR 17-41, is also before this section of Court.

2

repeatedly called the jail staff to remind them of her husband's condition. On February 3, 2017, Jesus was injured.[5] For four days, Jesus requested treatment several times and complained of chest pains and shortness of breath, but he was not evaluated by the jail's medical staff until February 7, 2017. He was admitted to the internal medicine unit of Leonard J. Chabert Medical Center the next day, but was promptly moved to the intensive care unit for treatment of hypoxia and other ailments. After twenty days in the ICU, Jesus died on March 1, 2017. The Terrebonne Parish Sherriff's Office would not provide information of Jesus's condition or location to his wife.[6] Accordingly, Jesus had no contact with any family member after he was injured, and died alone.

Georgina Hinojosa brought this lawsuit individually and on behalf of her deceased husband, Jesus Hinojosa, on September 29, 2017. She sued Terrebonne Parish Consolidated Government, and Terrebone Sheriff Jerry Larpenter, Richard Neal, and Kelly Gaudet, in their official and individual capacities. Richard Neal was an

---

[5] The complaint states that the "[t]he injury was caused by poor conditions at the jail and the failure of jail staff to properly supervise the inmates."

[6] According to the complaint, Mrs. Hinojosa spoke with her husband on the phone every day he was detained until his injury. When she called on February 3rd and could not get in touch with him, she became concerned and repeatedly attempted to obtain information about his whereabouts and health from the jail staff over the following weeks.

employee of TPCG and provided care to pre-trial inmates. Kelly Gaudet is a registered nurse and was an employee of TPCG, and oversaw the care for Jesus Hinojosa.[7] Mrs. Hinojosa brings this lawsuit pursuant to 42 U.S.C. § 1983; she asserts that the defendants violated her husband's Fourteenth Amendment Due Process rights of the federal, and state, constitutions by failing to provide adequate medical care and access to medications.[8] She also asserts that the defendants were negligent under Louisiana law tort principles and are liable to her for damages caused by Mr. Hinojosa's wrongful death.[9]

Terrebone Sheriff Jerry Larpenter answered the complaint on October 24, 2017. Terrebonne Parish Consolidated Government, Richard Neal, and Kelly Gaudet filed this motion to dismiss on November 17, 2017. In the plaintiff's opposition to the motion to dismiss, she requests that should the Court grant the defendants'

---

[7] The complaint named "yet unidentified employees" of the Terrebonne Parish Sherriff's Office and the Terrebonne Parish Consolidated Government as defendants, but has not further identified any individuals besides Larpenter, Gaudet, and Neal.
[8] The complaint further alleges that the defendants' failure to provide Mr. Hinojosa with medical care, despite their knowledge of his pre-existing medical conditions and the injury he sustained in jail, caused his death. Further, it alleges that the defendants imposed a significant hardship on Mr. Hinojosa through a pattern of omissions, failing to train or supervise subordinate employees, and implementing ineffective policies or customs.
[9] Specifically, Mrs. Hinojosa asserts a wrongful death action, a survival action, and a loss of consortium action pursuant to the Louisiana Civil Code.

4

motion to dismiss that she be afforded the opportunity to amend her complaint to remedy the deficiencies.

I.

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014)(citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

II.

Title 42, U.S.C. § 1983 creates a private right of action for violations of federally-secured rights under color of state law. To establish Section 1983 liability, the plaintiff must satisfy three elements:

(1) deprivation of a right secured by the U.S. Constitution or federal law,
(2) that occurred under color of state law, and
(3) was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)(citation omitted). In pursuing his inadequate medical care claims, Hinojosa has sued Terrebonne Parish Consolidated Government, Terrebonne Sheriff Jerry Larpenter in his individual and official capacity, Richard Neal in his individual and official capacity, and Kelly Gaudet in her individual and official capacity.

## A. Municipality Claims

Local governmental entities may be liable for Section 1983 for monetary, declaratory, or injunctive relief, but only in the limited circumstance of when a constitutional tort is caused through the execution of a policy or custom of the municipality. Monell v. Dep't of Soc. Servs. of New York, et al., 436 U.S. 658, 691 (1978); see Bowen v. Watkins, 669 F.2d 979, 989 (5th Cir. 1982)(citation omitted). Accordingly, a governmental entity is not liable "for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694.

In determining whether municipal liability attaches, the Court looks to whether unconstitutional conduct is directly attributable to the municipality through some official custom or policy. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation

of a constitutional right." Peterson v. City of Fort Worth, 588 F.3d 838, 847 (5th Cir. 2009). A plaintiff can satisfy the pleading requirements under Rule 12(b)(6) even if he cannot identify the policymaker, Groden v. City of Dallas, 826 F.3d 280, 284 (5th Cir. 2016), but the complaint must describe the policy and its relationship to the underlying constitutional violation with specific facts to survive a motion to dismiss. Balle v. Nueces County, 690 Fed.Appx. 847, 852 (5th Cir. 2017) (unpublished)(quoting Spiller v. Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997). "Thus, pleadings are sufficient when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force behind municipal employees' deliberate indifference to an inmate's serious medical needs." Id.[10]

---

[10] The Fifth Circuit does not necessarily require a complaint to state an unconstitutional policy. The court has found a complaint sufficient if it identifies a rule requiring the jails to provide efficient medical treatment and describes a pattern of behavior where the reasonable inference is that the municipality is violating that rule.

    For example, the Fifth Circuit held in Balle that the plaintiff's complaint brought under Section 1983 sufficiently pled facts that supported a municipality liability claim. Id. at 853. The plaintiff was injured by an officer during arrest, and during his six-day detention received little medical attention despite his multiple requests for medical treatment, his apparent inability to control his bodily functions, and frequent muscle spasms. Id. at 848-49. After he was finally transported to the hospital, he was diagnosed with various back injuries, underwent surgery, but was still unable to walk. Id. at 849. The complaint

Terrebonne Parish Consolidated Government is a governmental entity. See Fitch v. Terrebonne Parish Consol. Government, No. 06-3940, 2008 WL 275901, at *2 (Jan. 26, 2007). But the plaintiff fails to point to any policy or facts that could give rise to an inference that a policy exists, let alone to allege a policymaker or that the policy was a moving force behind the constitutional violation. The plaintiff only discusses the other defendants' liability, but as stated above, a governmental entity is not vicariously liable for its employees' actions. Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004). Accordingly, the plaintiff's complaint fails to allege sufficient facts to state a claim against TPCG.

---

alleged that the county had failed to enforce jailing policies mandated by a Texas Commission that requires jails to implement procedures for prompt and efficient care in acute situations. Id. at 853. The complaint alleges that when the plaintiff soiled himself from not being able to control his bodily functions the staff cleaned him and gave him a change of clothes without providing him medical attention. Id. Similarly, when he complained that he was paralyzed and could not walk, he was not given medical attention until the following day and even then, he was cleared with little follow-up. Id. The Fifth Circuit held that these incidences evidence a "pattern of failure [that] defined state law requiring that [the] county implement procedures to efficiently and promptly treat inmates." From the complaint's allegations of consistent wrongdoing, the court determined that "[r]easonable inferences can be drawn that [the] county had an unwritten policy . . . that fairly represents municipal policy of consistent noncompliance with required state medical standards and that this policy or practice of noncompliance was the moving forced behind the constitutional injuries." Id.

B. Official Capacity Claims

Hinojosa has sued Richard Neal and Kelly Gaudet in their official capacities.[11] Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Social Services, 436 U.S. 658, 690 n.55 (1978); Kentucky v. Graham, 473 U.S. 159, 166 (1985)("An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Because a suit against officials in their official capacity is treated as a suit against a municipality, the Court again looks to whether unconstitutional conduct is directly attributable to the municipality through some official custom or policy. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). To repeat and underscore, the Fifth Circuit has held that "[t]o establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." Peterson v. City of Fort Worth, 588 F.3d 838, 847 (5th Cir. 2009). To survive a motion to dismiss, "[t]he description of a policy or custom and its relationship to the underlying

---

[11] As mentioned above, the plaintiff also sued Terrebonne Parish Sheriff Jerry Larpenter. Sheriff Larpenter filed an answer to the complaint, and did not join this motion to dismiss.

10

constitutional violation, moreover, cannot be conclusory; it must contain specific facts." Spiller, 130 F.3d at 167.

Again, the plaintiff fails to allege facts that support her official capacity claims. She merely contends that common sense mandates that a policy exists, and that the defendants would need to use such policy in their roles, but fails to point to any facts that describe such a policy or give rise to the reasonable inference that it exists.[12] A baseless speculation that a policy exists solely because one could imagine that it would falls well-short of the pleading standard for official capacity claims. Her allegations that the defendants' were aware of Jesus Hinojosa's serious medical conditions and despite that knowledge, denied Mr. Hinojosa of the necessary treatment is likewise insufficient to state a claim in the context in which she asserts it.

## C. Individual Capacity Claims

Hinojosa also sued Neal and Gaudet in their individual capacity. Prison officials are charged with the duty to provide

---

[12] In her opposition to the motion to dismiss, she states that "[l]ogically, as the person in charge of medical treatment for the inmates of TPCJC, Neal would have certainly implemented plans for treatment and would have overseen training to insure his plans were properly executed," but fails to identify what those plans were (or even allege facts that allow the Court to reasonably infer what they are). She makes a similar claim in regards to Gaudet, and admits that she "is not in possession of the specific policies and procedures by which medical treatment is afforded at TPCJC . . . ."

reasonable medical care to prisoners and detainees. See Sibley v. Lemaire, 184 F.3d 481, 488-89 (5th Cir. 1999). The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To survive a motion to dismiss, the plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id.

As a pretrial detainee, Hinojosa's constitutional right to receive adequate medical care is derived from the Fourteenth Amendment Due Process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because prison detainees have not yet been convicted of the crime with which they are charged, they have a due process right not to be punished for that crime. Bell v. Wolfish, 441 U.S. 520, 535 (1979). The Fifth Circuit has determined that the criteria to assess whether a pretrial detainee's due process rights have been violated differs based on the type of challenge. If a pretrial detainee attacks the rules and restrictions of confinement, then the Court will apply the Bell test and find a constitutional violation if the "conditions accompanying pretrial detention are imposed upon detainees for the purpose of punishment." Id. Conversely, the Fifth Circuit, informed by the Supreme Court's ruling in Farmer v. Brennan, 511 U.S. 825 (1994), reconciled its case literature applicable to pretrial detainees such that the standard for

liability is the same for detainees and convicted inmates when episodic acts or omissions of jail officials deprive the inmate of receiving medical care.[13] Accordingly, if the defendant attacks the episodic acts or omissions of the state official, the official's constitutional liability "should be measured by a standard of subjective deliberate indifference . . . ." Hare v. City of Corinth, Miss., 74 F.3d 633, 643 (5th Cir. 1996)(*en banc*). Thus, the appropriate standard to apply in analyzing constitutional challenges brought by pretrial detainees turns on whether the detainee challenges a "condition of confinement" or an "episodic act or omission." Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009)(citing Hare v. City of Corinth, Miss., 74 F.3d 633, 644-45 (5th Cir. 1996)(*en banc*)).

A condition of confinement typically refers to a policy, like the number of bunks per cell, where an episodic act or omission "faults specific jail officials for their acts or omissions because the plaintiff cannot establish the existence of an officially sanctioned unlawful condition." Shepherd v. Dallas County, 591

---

[13] In Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996), the Fifth Circuit held that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." Thus, the standard applicable to episodic act or omission claims brought by pretrial detainees is substantially equivalent to Eighth Amendment protections available to a convicted inmate.

F.3d 445, 452 (5th Cir. 2009). The latter is a far more common claim than the former. Id. The plaintiff's claims that the defendants failed to provide adequate medical care to Jesus Hinojosa is an "episodic act or omission" because the defendants failed to fulfill their duties; his injury did not stem from conditions of his confinement but instead from an omission to act. See Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999)("[The inmate's] complaint turns on [the officers'] alleged failure to take better care of her and secure her to treatment. Such a complaint perfectly fits the definition of the episodic act or omission.").

Because the claim arises from an "episodic act or omission," a pretrial detainee's claim must meet the "deliberate indifference" standard. Hare, 74 F.3d at 643; see Shepherd, 591 F.3d at 452 ("Because the focus of the claim is one individual's misconduct, the detainee is required to prove intent—specifically, that one or more jail officials 'acted or failed to act with deliberate indifference to the detainee's needs.'"). The plaintiff must establish (1) "deliberate indifference on the part of any of the defendants" and (2) "any resulting substantial harm occasioned by the delay." Mendoza v. Lynaugh. 989 F.2d 191, 193 (5th Cir. 1993). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is liable "only if he knows

14

that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. "A serious medical need is one for which . . . the need is so apparent that even a laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). To show deliberate indifference, the plaintiff must allege that the defendant possessed a culpable state of mind: "[m]ere negligence or failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003)(citation omitted). A plaintiff could meet its burden by alleging that the jail officials "refused to treat him, ignored his complaints, [or] intentionally treated him incorrectly . . . ." See Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

Mrs. Hinojosa has plead facts that allow this Court to draw a reasonable inference that Neal and Gaudet acted with deliberate indifference in failing to provide Jesus Hinojosa with timely medical care. A pre-trial detainee died from a lack of oxygen after four days of requesting medical care when the officials were well-aware of the detainees existing heart conditions. Once he did receive treatment, Mr. Hinojosa was immediately admitted to a hospital and quickly transferred to the ICU, raising the inference that his injuries were severe while he was requesting treatment.

The officials tasked with providing him with medical care knew that Mr. Hinojosa faced a substantial risk of harm.

The Court recognizes that the plaintiff's complaint in regards to this claim is far from exemplary, and at times provides conclusory statements that simply cite the elements of the cause of action. However, the determination of whether the defendants acted with deliberate indifference is a factual matter best assessed when the parties have had the opportunity to develop their claims and submit evidence. The Court is satisfied that the plaintiff has sufficiently alleged facts that state a plausible claim to survive this motion to dismiss.

### D. State Law Claims

In Counts 3-8, the plaintiff alleges that the defendants violated Jesus Hinojosa's right to due process and cruel and unusual punishment under the Louisiana Constitution, and is liable for claims of negligence, wrongful death, a survival action, and loss of consortium under Louisiana Civil Code. The Court has original jurisdiction over the Section 1983 claim, and supplemental jurisdiction over these state law claims. 28 U.S.C. § 1367(a). If the Court dismisses the federal law claims, it may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(a); see <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 725-26 (1966). The defendants

assert that should the Court find that the plaintiff did not adequately plead her Section 1983 claims, it should dismiss the state law claims. However, the Court finds that the plaintiff has actionable claims under Section 1983, and therefore will continue to exercise supplemental jurisdiction over the plaintiff's state law claims. As the defendants raised no other objections to the state law claims, further analysis of their merit is unwarranted.

Accordingly, IT IS ORDERED: that the motion to dismiss for failure to state a claim by Terrebonne Parish Consolidated Government, Richard Neal, and Kelly Gaudet is GRANTED as to all federal claims against Terrebonne Parish Consolidated Government and claims against Neal and Gaudet in their official capacity and DENIED as to claims against Neal and Gaudet in their individual capacity and all state law claims.[14]

New Orleans, Louisiana, February 8, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[14] The status of Sheriff Jerry Larpenter (who did not join this motion to dismiss) in this litigation is undisturbed by this Order and Reasons.